**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DAVID JOSEPH STEFFEN,**

    **Petitioner,**

    v.                                      Case No. 1:92-cv-495
                                                    **JUDGE GREGORY L. FROST**
**ARTHUR TATE, JR., Warden,**            **Magistrate Judge Norah McCann King**

    **Respondent.**

## OPINION AND ORDER

    Petitioner Steffen, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action brought under 28 U.S.C. § 2254. This matter is before the Court upon Respondent's motion to expand the record and remand this case to the state courts (Doc. # 203), Petitioner's memorandum in response (Doc. # 205), and Respondent's reply, (Doc. # 206).

### I. Overview

    In a letter dated February 3, 2006, Respondent notified the Court and counsel for Petitioner that the rape kit in possession of the Hamilton County Coroner's Office had been subjected to DNA testing and that the results had excluded Petitioner as the source of semen recovered from the victim's body. The Court then conducted a status conference on February 9, 2006 during which the Court directed Respondent to file, within two weeks, any motion for additional testing, as well as any motion to supplement the record with the DNA test results referenced in its February 3, 2006 correspondence.

    To that end, Respondent filed a motion on February 24, 2006 seeking not only to expand the record with DNA testing reports regarding the profile obtained from the rape kit of the victim

excluding Petitioner as the source of semen found on the victim, but also to stay and abey these proceedings to "afford" Petitioner the "opportunity" to return to the state courts to exhaust this newly-discovered evidence. (Doc. # 203, at 1.) Assuming the Court expands the record with the DNA testing reports, Respondent argues, Petitioner's tenth ground for relief, in which he challenges the sufficiency of the evidence supporting his conviction for rape, becomes newly constituted and not exhausted. The claim would become significantly different and in a stronger evidentiary posture than the claim that the state courts considered and rejected. Under such circumstances, Respondent argues, the claim must be returned to the state courts for further adjudication. Further, the Court should return to the State the official custody of the physical evidence now in the Court's possession. In the event that the Court declines to "remand" this case to the state courts, Respondent argues in the alternative that this Court should stay these proceedings and proceed with the additional DNA testing of evidentiary exhibits in the possession of this Court that was contemplated under this Court's order of October 5, 2005. (Doc. # 181.)

    Petitioner filed a Memorandum in Response on March 16, 2006, agreeing with Respondent's motion to expand the record with the DNA test result but opposing Respondent's motion to send this case back to the state courts for want of exhaustion. (Doc. # 205.) Specifically, Petitioner argues that if a claim has been exhausted, there is no mechanism in habeas corpus by which a federal court may "remand" a claim back to the state courts for further proceedings or hearings. Petitioner insists that his tenth ground for relief has been fully exhausted, having been presented to the Ohio Court of Appeals and the Supreme Court of Ohio more than twenty years ago. Regarding Respondent's contention that the new DNA evidence in

support of his tenth ground for relief has never been considered by the state courts, Petitioner insists that the doctrine of exhaustion applies to remedies, rather than evidence, and presupposes the availability of state court remedies. Dismissing the possibilities of reopening his appeal pursuant to Ohio R. App. P. 26(B), pursuing postconviction relief pursuant to Ohio Rev. Code § 2953.21 *et seq.*, or filing a motion for a new trial pursuant to Ohio R. Crim. P. 33, Petitioner argues that no state court remedies are available for him to "re-present" his tenth ground for relief, even with the newly discovered DNA evidence. (Doc. # 205, at 9-10.) Finally, Petitioner asserts that no purpose would be served by Respondent's alternative request that the Court permit additional DNA testing of the evidentiary exhibits in its possession.

## II. Expansion of the Record

Rule 7 of the Rules Governing Section 2254 Cases permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the court's resolution of the petition. The rule provides:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
>
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.
>
> (c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7, Rules Governing Section 2254 Cases (eff. 12/01/04). The decision of whether to order Rule 7 expansion is within the sound discretion of the district judge. *See Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988). It would appear that, under the language of Rule 7, the materials

3

to be added simply must be relevant to the determination of either the merits of the constitutional claims or any other issue in the case. (Advisory Committee Notes regarding the 2004 Amendments, Rule 7, Rules Governing Section 2254 Cases.)

Because the DNA testing reports submitted by Respondent unquestionably are relevant to, at the very least, the determination of Petitioner's tenth ground for relief, *i.e.*, insufficiency of the evidence supporting his rape conviction, and because Petitioner does not object, the Court **GRANTS** Respondent's motion to expand the record with the DNA testing reports.

### III. Exhaustion

On March 29, 2004, this Court issued an opinion and order denying in part and granting in part Respondent's motion to dismiss procedurally defaulted claims. (Doc. # 142.) Regarding Petitioner's tenth ground for relief, in which Petitioner argues that the state failed to prove that he was the person who engaged in sexual conduct with the victim immediately preceding her death, or in the alternative, that the victim was alive when the alleged sexual conduct took place, (Doc. # 128, at ¶¶ 56-83), the Court was compelled to "reserve until the completion of [] discovery its determination of whether the fundamental miscarriage of justice exception may excuse the default of Petitioner's tenth and eleventh grounds for relief." (Doc. # 142, at 86.)

On December 2, 2004, this Court issued an order granting Petitioner leave to conduct certain discovery and directing Petitioner to complete that discovery within three months. In conjunction with an order that the Court issued on March 11, 2005 granting Petitioner additional time to complete discovery, as well as leave to conduct limited additional discovery, the Court learned for the first time that Respondent had offered to conduct DNA testing regarding Petitioner's repeated assertion that he had never raped the victim. (Doc. # 151.) Following

4

several rounds of briefing during which the parties staked out their respective positions on whether, or to what extent, any DNA testing should be conducted in this case, the Court eventually decided not to test the evidentiary exhibits in its possession, because Petitioner objected and because it was unclear what could be gleaned from such testing, but noted that there was no reason why Respondent could not, of his own volition and at his own expense, submit the rape kit in possession of the State for DNA testing or any other forensic testing as he saw fit. (Doc. # 187.) Respondent did just that. In a letter dated February 3, 2006, Respondent notified the Court and Petitioner's counsel that the rape kit in possession of the Hamilton County Coroner's Office had been subjected to DNA testing and that the results had excluded Petitioner as the source of semen recovered from the victim's body.

     A state prisoner must exhaust available state court remedies before he can secure federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Silverberg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). The exhaustion doctrine, although not jurisdictional, exists to prevent needless friction between state and federal courts, both of which are obligated to enforce federal law. "Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Rose v. Lundy*, 455 U.S. 509, 515-516 (1982)); *see also Butler v. Rose*, 686 F.2d 1163, 1168 (6th Cir. 1982) (holding that protecting the state courts' role in enforcement of federal law "is accomplished by giving the state courts an opportunity to pass upon and correct alleged violations of the constitutional rights of state prisoners in the first instance").

5

A Petitioner satisfies the exhaustion requirement when he fairly presents the "substance" of his federal habeas corpus claim to the state courts in a manner that gives them a "fair opportunity" to apply controlling legal principles to the facts bearing on that claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard v. Connor*, 404 U.S. at 275, 277-78). In *Sampson v. Love*, 782 F.2d 53 (6th Cir. 1986), the Sixth Circuit considered for the first time "whether, or when, new facts or evidence, not presented to the state courts, can affect a habeas Petitioner's claim to such a degree that the new facts or evidence must first be presented to the state courts." *Id.* at 55. The Sixth Circuit concluded that when new evidence presented in support of a habeas claim places that claim in a "significantly different posture," the state courts must be given an opportunity to consider the claim in that posture. *Id.*; *cf. Vasquez v. Hillery*, 474 U.S. 254, 260 (1986) (holding that a federal court may consider new facts developed in habeas corpus proceedings where they do not "fundamentally alter the legal claim already considered by the state courts").

On direct appeal to the Ohio Court of Appeals for the First Appellate District, Petitioner raised a claim challenging the sufficiency of the evidence supporting his rape conviction. That court found the following:

> The physical evidence at the crime scene is amply sufficient for a reasonable mind to conclude beyond a reasonable doubt that appellant raped Karen before cutting her throat. The existence of semen inside her vagina and the presence of the undisturbed unsmeared drop of blood on her pubic area substantiate that sequence of events. A trier of fact could reasonably conclude from the evidence that the events occurred in the following sequence: some clothing was ripped, screaming started, Karen was beaten, she temporarily lost consciousness, she was raped, and her throat was cut, spattering blood over her body and the surrounding area.
>
> Appellant contends that there is a reasonable doubt that he had intercourse with the victim. She was engaged to be married to James A. Shrider, and the

> blood tests used by the state could not exclude Shrider as the depositor of the semen in her vagina. The tests also could not exclude appellant, however. The tests were exclusionary only, and the results therefore were inconclusive. Furthermore, James Shrider testified that he had never had sexual intercourse with Karen at any time, and that he last saw her early in the evening before her murder when they made a short trip outside the residence. The condition and the positioning of the semen inside the vagina support the conclusion that it was deposited there at the time of the murder, not the night before.

*State v. Steffen*, No. C-830445, 1985 WL 4301 (Ohio App. 1 Dist. Dec. 11, 1985); Exhibit G to

Doc. # 19, Return of Writ, at 16-17.

On direct appeal to the Supreme Court of Ohio, Petitioner again raised a claim challenging the sufficiency of the evidence supporting his rape conviction. That Court found the following:

> Quantities of semen were found in the victim's vagina, around the pubic region and on her underwear. Tests conducted on the semen failed to exclude appellant as the depositor, and disclosed the presence of living sperm, indicating that the semen was recently deposited. Further evidence established that the semen was probably deposited while the victim was prone without her ever again being ambulatory. A bruise was observed on the inside of the victim's upper thigh, consistent with the use of force. The victim's shorts and panties had been ripped open to expose her pubic region, and her blouse was also torn, exposing her breasts. A perfectly formed, uncongealed drop of unsmeared blood was found on the victim's pubic region, indicating that had sexual intercourse occurred after the drop had fallen there, it would have been smeared, leading to an inference that intercourse had taken place before, and very recently before, the drop fell. At the time she was found, the victim's hair was still wet from a shower, again indicating that the semen had been very recently deposited, since the shower would have rinsed it away. All this evidence leads to a compelling conclusion that a rape had occurred and that appellant was the perpetrator.

*State v. Steffen*, 31 Ohio St. 3d 111, 118-119 n.11 (1987).[1]

It is an understatement to say that new DNA results excluding Petitioner as the source of

---

[1] Petitioner also raised claims challenging the sufficiency of the evidence supporting his rape conviction in his original and successor postconviction actions. The state courts summarily rejected his claims without making any notable findings of fact.

7

the semen found inside the victim place his tenth ground for relief in a "significantly different posture." In rejecting Petitioner's sufficiency of the evidence claim, the state courts relied heavily on evidence that semen was found in the victim,and that the forensic tests performed at that time could not exclude Petitioner as the source. The state courts further emphasized that, although tests also could not exclude the victim's fiancé, James Shrider, as the source, Mr. Shrider testified that he and the victim had never had intercourse and that he had not seen the victim on the day she was murdered. There can be little doubt that DNA test results excluding Petitioner as the source of semen found in the victim have placed Petitioner's claim challenging the sufficiency of the evidence supporting his rape conviction in a "significantly different posture." *Sampson*, 782 F.2d at 55.

This Court is constrained to find that Petitioner's claim challenging the sufficiency of the evidence supporting his rape conviction, as presently constituted in light of the new DNA test results, is unexhausted. There are limited, exceptional circumstances under which a federal court may excuse nonexhaustion and address the merits of an unexhausted claim, *see e.g., Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999), but none of them are present here. In the instant case, the State has not waived the exhaustion requirement, this Court cannot dismiss Petitioner's unexhausted claim as plainly without merit, and it appears that there are available state remedies. *Id*.

Finding that a claim is unexhausted presupposes the availability of a remedy in the state courts. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("Exhaustion is a problem only if the state still provides a remedy for the habeas Petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction."). Petitioner contends that

there are no available remedies for his newly-constituted tenth ground for relief, dismissing as unavailable, ineffectual, or otherwise futile the possibilities of filing a motion to reopen his direct appeal, a successor postconviction action, or a motion for a new trial. (Doc. # 205, at 6-10.) This Court does not find that the situation regarding the availability of state remedies is as dire as Petitioner would suggest. In the Sixth Circuit, "where the state's remedial process is open to interpretation with respect to the availability of relief via that process, the state should be given an opportunity to adopt the interpretation." *Sampson*, 782 F.2d at 58.

Although this Court is in no position either to command the state courts to make a remedy available or to direct Petitioner to pursue a certain remedy, it appears to this Court that at least two remedies are available for Petitioner to present his newly constituted tenth ground for relief. It appears that Petitioner could, pursuant to Ohio Rev. Code § 2953.23, file a second or successive postconviction action in the state trial court. Petitioner's assertion that "Ohio's First Appellate District remains exceptionally hostile to the reception of newly developed exonerating evidence for the purpose of enforcing and vindicating the state prisoner's federal constitutional rights," (Doc. # 205, at 8), does not mean that he does not have an available remedy under Ohio's postconviction statute. The Court is not persuaded by the many decisions cited by Petitioner (Doc. # 205, at 7) that postconviction review under Ohio Rev. Code § 2953.23 is absolutely foreclosed under Ohio case law.

It also appears that Petitioner could, pursuant to Ohio R. Crim. P. 33(A)(6), file a motion for a new trial based on newly discovered evidence. Petitioner complains that "such motions are adjudicated by reference to state statutory and common law," (Doc. # 205, at 8), but the Court is not at all sure how that demonstrates that the remedy is *unavailable* for Petitioner to present his

newly constituted tenth ground for relief. In *State v. Elliott*, No. C-020736, 2003 WL 22149321, (Ohio App. 1 Dist. Sept. 19, 2003), a petitioner filed, among other things, a motion for a new trial based on newly discovered DNA evidence pursuant to Ohio R. Crim. P. 33. The trial court rejected his motion on the merits and the Ohio Court of Appeals for the First Appellate District affirmed that decision, because, "viewing the DNA-test results in the context of the record as a whole, we cannot say that the new evidence disclosed a strong probability that it would change the outcome if a new trial were granted." *Id*. at *3. This fact-specific decision cannot be read as creating a bright line rule that a Crim. R. 33 motion is unavailable for presenting newly discovered DNA evidence.

Ultimately, as noted above, it is not the place of this Court either to command the state courts to make a remedy available or to direct Petitioner to pursue a certain remedy, and nothing from this order should be construed as suggestion to Petitioner about which remedies to pursue or as a guarantee that the state courts will hold the remedies mentioned to be available. But because there is ambiguity about their availability, the Court is compelled to require Petitioner to attempt them. *Sampson*, 782 F.2d at 58. If, as Petitioner suggests, the state courts are predisposed to foreclose review of his newly constituted claim challenging the sufficiency of the evidence supporting his rape conviction, he need not fear; the doors to this Court will remain open to him to litigate that claim.

Until recently, a federal court faced with a mixed habeas corpus petition, *i.e.*, one containing both exhausted and unexhausted claims, was required to dismiss that petition in its entirety, without prejudice, to permit the Petitioner to exhaust his claims. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). When the Supreme Court imposed a "total exhaustion" requirement,

10

however, "there was no statute of limitations on the filing of federal habeas corpus petitions." *Rhines v. Weber*, 544 U.S. 269, 274 (2005). Now, in order to ensure that a Petitioner who otherwise files a timely habeas corpus petition is not precluded by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1) from re-filing his petition following the exhaustion of his state remedies, a federal court is permitted to stay and abey the habeas corpus proceedings to permit exhaustion, rather than dismissing the petition, but only upon a finding that there was good cause for the Petitioner's failure to exhaust his claims in the state court and that Petitioner's unexhausted claim is not plainly meritless. *Rhines*, 544 U.S. at 277.

This Court has no difficulty concluding that there was good cause for Petitioner's failure to exhaust his newly constituted tenth ground for relief in the state courts, in view of the fact that the DNA testing that gave rise to the results that now change the landscape of Petitioner's tenth ground for relief was not available at the time of Petitioner's trial. Moreover, the Court cannot find that Petitioner's tenth ground for relief, as presently constituted, is plainly meritless. That being so, this Court will issue an order staying and abeying these proceedings to permit Petitioner to exhaust his tenth ground for relief in the state courts.

In accordance with the Supreme Court's admonition that "[a] mixed petition should not be stayed indefinitely," this Court will "place reasonable time limits on [] Petitioner's trip to state court and back." *Rhines*, 544 U.S. at 277-78. Petitioner Steffen will have forty-five days after this stay is entered to pursue his state court remedies and forty-five days after state court exhaustion is complete to return to this Court, assuming that it will be necessary for Petitioner to return to this Court.

**IV. Return of Evidentiary Exhibits to the State**

In conjunction with his request to return this case to the state courts for want of exhaustion, Respondent also asks this Court to "return to the State the official custody of the physical evidence now held by this Court." (Motion to Expand the Record, Doc. # 203-1, at 3.) Respondent refers to two boxes of evidentiary exhibits from Petitioner's trial that are, for reasons that will probably never be entirely clear, in possession of this Court. Those exhibits include the victim's shorts and underpants, as well as a "vaginal swab extract" enclosed in a cardboard container and a "vaginal swab" in a white plastic dish. (Opinion and Order, 11/16/05, Doc. # 187, at 5.) Although the Court remains skeptical that those evidentiary exhibits will yield anything of value with respect to DNA testing, due primarily to their condition and their manner of storage, the Court grants the request to return those boxes to the custody of the State. Counsel for Respondent are directed to contact the Court, within ten (10) days of the date of this order, to arrange a transfer of the boxes in a manner that will preserve the chain of custody (even though earlier links in that chain already have been broken).

## V. Conclusion

As this Court has alluded to more than once in its previous rulings, this case has seen more than its share of delays. This Court was poised to move this case toward final resolution and is loathe to return it to the state courts for what is sure to result in several more years of delay. But the principles of comity and federalism that lie at the heart of habeas corpus dictate this result.

For the foregoing reasons, the Court **GRANTS** Respondent's motion to expand the record with DNA testing reports, for an order staying and abeying this case, and for an order permitting the return of evidentiary exhibits in possession of this Court to the State. This case is

hereby **STAYED**.

Petitioner Steffen will have forty-five days from the date of this order to pursue his state court remedies and forty-five days after state court exhaustion is complete to return to this Court. Counsel for Respondent are directed to contact the Court, within ten (10) days of the date of this order, to arrange a transfer of the boxes of evidence in a manner that will preserve whatever is left of the chain of custody.

**IT IS SO ORDERED.**

      /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**